| | |
|---|---|
| MELISSA ANN GRIFFITH, )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>)<br>)<br>FNU JONES, et al., )<br>)<br>Defendants. )<br>_____ ) | **MEMORANDUM OF<br>DECISION AND ORDER<br>ON INITIAL REVIEW** |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, [Doc. 1], filed under 42 U.S.C. § 1983. See 28 U.S.C. §§ 1915(e)(2) and 1915A. Plaintiff is proceeding in forma pauperis. [Docs. 2, 4].

I.     **BACKGROUND**

Pro se Plaintiff Melissa Ann Griffith ("Plaintiff") is a prisoner of the State of North Carolina currently incarcerated at the Western Correctional Center for Women in Black Mountain, North Carolina. On January 8, 2026, she filed this action pursuant to 42 U.S.C. § 1983, based on alleged events at the Anson Correctional Institution ("Anson") in Polkton, North Carolina. [Doc. 1]. Plaintiff names the following Defendants: FNU Jones, identified as a Correctional Officer at Anson; Miranda Mims, identified as the Warden at Anson; Kevin Ingram, identified as a Unit Manager at Anson; FNU Glover, identified as an Assistant Unit Manager at Anson; FNU Myers, identified as a Lieutenant at Anson; Ragina Hampton, identified as a Disciplinary Hearing Officer ("DHO") staff member; Monica Bond, identified as the Chief DHO; and Stephanie LeCato, identified as "Grievance Staff" at Anson.[1] [Doc. 1 at 1-3; see Doc. 1-2 at 14]. Plaintiff sues

---

[1] Plaintiff also lists FNU Philemon, identified as a Captain and PREA Grievance officer, as a party to this lawsuit, but failed to include this individual in the caption of the Complaint. [Doc. 1-2 at 14; see Doc. 1 at

Defendants Jones, Mims, and Ingram in their individual and official capacities, Defendant Glover in his official capacity only, and does not specify the capacity in which she purports to sue the remaining Defendants. [See Doc. 1 at 2-3; Doc. 1-2 at 14]. The Court, therefore, will assume she intended both.

Plaintiff appears to allege as follows.[2]

On February 6, 2024, Defendant Jones wrote the Plaintiff up, claiming that, as Defendant Jones walked past Plaintiff's cell at 6:12 p.m. and 7:01 p.m., the door opened, and Plaintiff was "messaging [sic] [her] vagina" with her pants pulled down.[3] [Doc. 1-2 at 4]. When asked for her statement, Plaintiff told "them" that she "did not do it." [Id. at 4]. When asked if Plaintiff had any physical evidence, she said "no." [Id. at 5]. Defendant Glover advised Plaintiff that, because of the severity of the situation, the matter would be referred for a disciplinary hearing. On February 14, 2024, Plaintiff was found guilty and appealed. After the hearing, Plaintiff realized that her cell was in clear view of the cameras. [Id. at 5]. Plaintiff immediately wrote to the Chief DHO, Defendant Bond, and told her of the "new found evidence" that would prove the door never came open when Defendant Jones walked by at 6:12 p.m. [Id. at 5-6]. Defendant Ingram was

---

1]. The Court, therefore, will dismiss this putative Defendant. See Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties[.]"); Myles v. United States, 416 F.3d 551 (7th Cir. 2005) ("[T]o make someone a party the plaintiff must specify him in the caption and arrange for service of process."); Perez v. Humphries, No. 3:18-cv-107-GCM, 2018 WL 4705560, at *1 (W.D.N.C. Oct. 1, 2018) ("A plaintiff's failure to name a defendant in the caption of a Complaint renders any action against the purported defendant a legal nullity.").

[2] The allegations in Plaintiff's disorganized, redundant, meandering Complaint are largely difficult to meaningfully review and summarize. While the Court must carefully review a complaint to determine if a plaintiff has alleged facts sufficient to support his claims, White v. White, 886 F.2d 721, 722-723 (4th Cir. 1989), the Court need not act as a pro se plaintiff's advocate or scour a complaint to discern the plaintiff's unexpressed intent, see Williams v. Ozmint, 716 F.3d 801, 803 (4th Cir. 2013), and the Court will not do so here.

[3] Plaintiff also alleges that there were various inconsistencies in Defendant Jones' statements regarding this incident. [Doc. 1-2 at 11].

2

responsible for watching the camera footage. [Id. at 6]. He gave "falsified information" to protect Defendant Jones. [Id. at 13]. Two weeks after being released from segregation, Plaintiff learned of Defendant Bond's decision "of guilty," presumably upholding the facility decision. [Doc. 1-2 at 6].

Plaintiff filed grievances when she first learned of the write-up. In response, Plaintiff was only provided a request form from the grievance coordinator, possibly Defendant LeCato, indicating that it had been passed on to Captain Philemon who "is over prea." [Doc. 1-2 at 5]. Plaintiff vaguely alleges that "proper procedure was not given to [her] when [she] filed [her] grivances [sic]." [Doc. 1-2 at 7].

On October 7, 2024, Defendant Jones harassed the Plaintiff during the breakfast meal. [Doc. 1 at 4; Doc. 1-2 at 9]. Defendant Jones was the only officer stationed at the "diet line side" of the cafeteria and, if Plaintiff had gone through that line, she would have been the only person beside Jones and Plaintiff does not feel comfortable around Jones. [Doc. 1-2 at 7]. When Plaintiff returned to the dorm after breakfast, she immediately filed a grievance against Defendant Jones. [Id. at 8]. Plaintiff was called to Defendant Mims' office where Defendant Myers was also present. [Id.]. Plaintiff explained what happened that morning and told Defendants Mims and Myers that she was "going to take the situation to court." [Id.]. Defendant Mims implied that Plaintiff was harassing Defendant Jones and interfering with her work, which Plaintiff denied. [Id.]. Plaintiff was never loud or disrespectful to Defendant Jones and did not say anything threatening to Defendants Mims or Myers. [Id. at 8-9]. Defendant Mims wrote Plaintiff up for threatening an officer and disobeying a direct order. [Id. at 9]. Plaintiff pleaded not guilty and spent 30 days in segregation, resulting in 54 days of gain time lost. [Id.].

Plaintiff further alleges that she "was humiliated daily for being a Christian," "bullied for

3

[her] religious beliefs," and that she was prevented from attending Christian services while in segregation. [Doc. 1-2 at 10, 13].

Plaintiff purports to state claims for the failure to protect, unfair disciplinary hearing, defamation, slander, the right to practice religion, and the failure to return and properly process Plaintiff's PREA grievances.[4] [Id. at 3-4; see Doc. 1-2 at 13]. For injuries, Plaintiff claims that she was placed in segregation for a total of 90 days,[5] resulting in lost privileges and 180 days of lost gain time. [Id. at 5]. Plaintiff seeks $1 million in damages. [Id.].

## II.   STANDARD OF REVIEW

Because Plaintiff is proceeding pro se, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, § 1915A requires an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and the court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear

---

[4] The Court will address only those claims fairly raised by Plaintiff's Complaint.

[5] Elsewhere in her Complaint, Plaintiff alleges that she spent 60 days in segregation because she "was lied on by staff." [Doc. 1-2 at 7].

4

failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed by a "person" acting under color of state law. See 42 U.S.C. § 1983; Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Health & Hosp. Corp. of Marion Cnty. v. Talevski, 599 U.S. 166, 143 S.Ct. 1444 (2023).

### A. Official Capacity Claims

Plaintiff purports to sue some of the Defendants, who are state officials, in their individual and official capacities. However, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Dep't of State Police, 491 U.S. 58, 71 (1989). Because a state is not a "person" under § 1983, state officials acting in their official capacities cannot be sued for damages thereunder. Allen v. Cooper, No. 1:19-cv-794, 2019 WL 6255220, at *2 (M.D.N.C. Nov. 22, 2019). Furthermore, the Eleventh Amendment bars suits for monetary damages against the State of North Carolina and its various agencies. See Ballenger v. Owens, 352 F.3d 842, 844-45 (4th Cir. 2003). As such, Plaintiff's claims against Defendants in their official capacities do not survive initial review and will be dismissed. Because Plaintiff names Defendant Grover in his official capacity only, the Court will dismiss this Defendant.

### B. Access to Grievance Procedure

"[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). "An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance procedure." Booker

5

v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017). Plaintiff, therefore, has failed to state a claim based on alleged improper grievance procedure. The Court, therefore, will dismiss this claim.

### C. Disciplinary Charges

To the extent Plaintiff seeks to state a claim based on false disciplinary charges, this claim appears to be barred by Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the United States Supreme Court held as follows:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction and sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

Id. at 485-87 (footnotes omitted). In Edwards v. Balisok, 520 U.S. 641 (1997), the Supreme Court extended the Heck rule to claims alleging constitutional deficiencies in prison disciplinary proceedings that have resulted in the loss of good time credits.

Here, if the Plaintiff were to prevail on a claim that any disciplinary charges were unfounded, that would necessarily imply the invalidity of the disciplinary convictions. See, e.g., Edwards, 520 U.S. at 646-47 (plaintiff's claims that he was denied the opportunity to put on a defense and that there was deceit and bias by the hearing officer would necessarily imply the invalidity of the disciplinary proceedings); Moskos v. Hardee, 24 F.4th 289 (4th Cir. 2022)

6

(prisoner could not bring § 1983 due process claim that prison officials fabricated evidence so that plaintiff would be wrongfully convicted of prison disciplinary infractions, causing him to lose good-time credits, because the disciplinary conviction had not been invalidated). The Plaintiff, however, has not alleged that any disciplinary convictions have been reversed or otherwise invalidated. Therefore, Plaintiff's claim appears to be barred by Heck.

  **D.**  **Due Process**

Prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citing Morrissey v. Brewer, 408 U.S. 471, 488 (1972)). Where a prison disciplinary hearing may result in loss of good time credits or solitary confinement, however, an inmate is entitled to certain due process protections. These include: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. See Wolff, 418 U.S. at 564-71. There is no constitutional right, however, to confront and cross-examine witnesses or to retain and be appointed counsel. See Baxter v. Palmigiano, 425 U.S. 308, 322 (1976); Brown v. Braxton, 373 F.3d 501, 505-06 (4th Cir. 2004). If the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. See Baxter, 425 U.S. at 323 n.5. Moreover, substantive due process is satisfied if the disciplinary hearing decision was based on "some evidence." Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985).

Taking Plaintiff's allegations as true and giving her the benefit of every reasonable inference, she has nonetheless failed to state a due process claim based on the conduct of any

7

disciplinary proceedings. Plaintiff's allegations are too vague and conclusory to state a claim for relief in the first place. See Fed. R. Civ. P. 8(a)(2) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief"); Simpson v. Welch, 900 F.2d 33, 35 (4th Cir. 1990) (conclusory allegations, unsupported by specific allegations of material fact are not sufficient); Dickson v. Microsoft Corp., 309 F.3d 193, 201-02 (4th Cir. 2002) (a pleader must allege facts, directly or indirectly, that support each element of the claim). Plaintiff alleges only that a disciplinary hearing was "unfair," and that Defendant Ingram gave "falsified information."

Plaintiff's allegations fail to state a due process claim in any event. That is, Plaintiff fails to allege facts showing that she was deprived of advance written notice of the disciplinary charges, the opportunity to call witnesses and present documentary evidence in her defense, or a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. See Wolff, 418 U.S. at 564-71. Rather, Plaintiff alleged that she was found guilty after a hearing was conducted and she was asked if she had any evidence.

For these reasons, Plaintiff has failed to state a due process claim. The Court, therefore, will also dismiss this claim.

### E. Free Exercise Claim

To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that: (1) he held a sincere religious belief and (2) that his religious practice has been substantially burdened by a prison policy or practice. See generally Hernandez v. C.I.R., 490 U.S. 680, 699 (1989); Greenhill v. Clarke, 944 F.3d 243, 253 (4th Cir. 2019). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner, 482 U.S. at 89). "A substantial burden either

8

Case 3:26-cv-00017-FDW    Document 5    Filed 01/16/26    Page 8 of 12

puts pressure on a person to change his religious beliefs or puts that person to a choice between abandoning his religion or following his beliefs and losing some government benefit." Firewalker-Fields v. Lee, 58 F.4th 104, 114 (4th Cir. 2023) (citing Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006)). If that threshold showing is made, the prisoner must then show that the practice or regulation is not "reasonably related to legitimate penological interests." Id. (quoting Turner, 482 U.S. at 89).

Additionally, to establish liability under 42 U.S.C. § 1983, a plaintiff "must affirmatively show that the official charged acted personally in the deprivation of [his] rights." Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) (cleaned up); see Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (citation omitted). Mere knowledge of a deprivation is insufficient. Williamson, 912 F.3d at 171.

Taking Plaintiff's allegations as true and giving her the benefit of every reasonable inference, she has failed to state a First Amendment free exercise claim. Even assuming that she sufficiently alleged a sincere religious belief, she alleges only that she was unable to attend Christian services while she was in segregation and that she was "bullied" and "humiliated" for her religious beliefs. She fails to allege who was responsible for bullying her or facts showing that her inability to attend Christian services in segregation constituted a substantial burden on her religious beliefs. The Court, therefore, will dismiss this claim for her failure to state a claim for relief.

F. **Failure to Protect**

The Eighth Amendment's Cruel and Unusual Punishments Clause also imposes on prison officials a duty to protect prisoners from violence at the hands of other prisoners and other prison officials. See Farmer, 511 U.S. at 833. Still, not "every injury suffered by one prisoner at the

9

Case 3:26-cv-00017-FDW    Document 5    Filed 01/16/26    Page 9 of 12

hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834. To state a claim against a prison official for failure to protect, an inmate must show: (1) "serious or significant physical or emotional injury," and (2) that prison officials exhibited deliberate indifference to inmate health or safety." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks omitted). To show deliberate indifference, the inmate "must show both (1) 'that the [prison] official in question subjectively recognized a substantial risk of harm' and (2) that the official also 'subjectively recognized' that any actions he took in response 'were inappropriate in light of that risk.'" Ford v. Hooks, --- F.4th ---, 2024 WL 3260902, at *4 (Jul. 2, 2024) (quoting Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (cleaned up)). It is not enough that the prison official should have recognized the risk and the inadequacy of his response. Id. Instead, the official "actually must have perceived" both. Parrish, 372 F.3d at 302-03 ("Deliberate indifference is a very high standard," and "a showing of mere negligence will not meet it") (quoting Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999)).

Taking Plaintiff's allegations as true and giving her the benefit of every reasonable inference, she has plainly failed to state an Eighth Amendment claim based on the failure to protect. That is, Plaintiff's claim appears to be based on an alleged failure to protect her from allegedly false disciplinary charges unassigned to any particular Defendant. Furthermore, the law is well-established that taunting comments, slurs, threats, and other verbal harassment by correctional facility staff, without more, are not actionable under § 1983. Wilson v. United States, 332 F.R.D. 505, 520 (S.D. W.Va. Aug. 19, 2019) (collecting cases). As such, to the extent Plaintiff contends any Defendant should have protected her from harassment by Defendant Jones, she has also failed to state a claim. The Court, therefore, will dismiss this claim.

### G. State Law Claims

To the extent that the Plaintiff seeks relief under North Carolina law, the Court declines to exercise supplemental jurisdiction, as no federal claim has passed initial review. See Artis v. Dist. Of Columbia, 583 U.S. 71, 74 (2018) (when a district court dismisses all claims independently qualifying for the exercise of federal jurisdiction, it "ordinarily dismiss[es] as well all related state claims."); 28 U.S.C. § 1367(c)(3). Accordingly, those claims are dismissed without prejudice.

Because Plaintiff has failed to state a claim for relief, Plaintiff's Complaint fails initial review, and the Court will dismiss it without prejudice. The Court, however, will allow Plaintiff to amend her Complaint to state a claim for relief. In amending her Complaint, Plaintiff is advised that she must list all Defendants she intends to sue in the caption on the first page of the Complaint.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff's Complaint fails initial review and will be dismissed without prejudice. The Court will allow Plaintiff thirty (30) days to amend his Complaint, if he so chooses, to properly state a claim upon which relief can be granted in accordance with the terms of this Order. Any amended complaint will be subject to all timeliness and procedural requirements and will supersede the Complaint. Piecemeal amendment will not be permitted. Should Plaintiff fail to timely amend his Complaint in accordance with this Order, the Court will dismiss this action without prejudice.

## ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's Complaint fails initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B) for Plaintiff's failure to state a claim for relief and shall be **DISMISSED WITHOUT PREJUDICE** in accordance with the terms of this Order.

**IT IS FURTHER ORDERED** that Plaintiff shall have thirty (30) days in which to amend

her Complaint in accordance with the terms of this Order. If Plaintiff fails to so amend his Complaint, the matter will be dismissed without prejudice.

**IT IS FURTHER ORDERED** that all Defendants are hereby **DISMISSED** as Defendants in this matter.

The Clerk is respectfully instructed to mail Plaintiff a blank prisoner § 1983 form.

**IT IS SO ORDERED**.

Signed: January 16, 2026

Frank D. Whitney
Senior United States District Judge